IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN VINCENT MARINO, II,

Petitioner,

v.

Civil action no. 2:04CV3
Criminal action no. 2:02CR28

UNITED STATES OF AMERICA,

Respondent.

ENTERED
NOV 1 2 2004
U.S. DISTRICT COURT
ELKINS, WV 26241

# REPORT AND RECOMMENDATION

## I. INTRODUCTION

On January 21, 2004, the *pro se* petitioner, John Vincent Marino, II, filed a Motion to Vacate Judgment and Sentence as Provided for by the Sixth Amendment to the Constitution of the United States.[1] On January 27, 2004, the Court Ordered the respondent to answer the motion. On February 26, 2004, the respondent filed Government's Response to and Motion to Dismiss Petitioner's Motion to Vacate Judgment and Sentence. On March 4, 2004, the Court issued a Roseboro notice advising the petitioner of his right to respond to the respondent's motion to dismiss. On March 5, 2004, the petitioner filed Petitioner's Reply to Government's Response to, and Motion to Dismiss Petitioner's Motion to Vacate Judgment and Sentence. On April 19, 2004, the petitioner filed Petitioner's Amended Reply to Government's Response to, and Motion to Dismiss Petitioner's Motion to Vacate Judgment and Sentence.

This matter is pending before me for initial review and report and recommendation pursuant

---

[1] At the time the petitioner filed his §2255 motion, he was an inmate at FCI-Morgantown, Morgantown, West Virginia. On February 8, 2004, the petitioner advised the Court that effective February 20, 2004, he would have a new address which appears to be a home address.



LR PL P 83.15.

## II. **BACKGROUND**

**A. Plea**

On August 27, 2002, the petitioner signed a plea agreement in which he agreed to waive his right to have his case presented to the grand jury and agreed to plead guilty to a one count information which charged him with bank fraud in violation of 18 U.S.C. §1344. In the agreement, the Government agreed to make the following nonbinding recommendations:

(1) That the Court credit the defendant with a reduction of three levels below the otherwise applicable guideline range for the "super acceptance of responsibility as provided by Guideline 3E1.1.

(2) That any fine imposed should be at the minimum end of the guideline range.

(3) That the court sentence the defendant to incarceration at the minimum end of the guideline ultimately found to be applicable by the court.

(4) That the court sentence the defendant to the minimum period of supervised release.

The parties further stipulated to the following facts:

John W. Marino, II, was the majority shareholder in a business called Wood Flex Flooring Corporation, which had a facility located in Elkins, West Virginia. The business began operation in West Virginia in 1991. On average, Wood Flex employed forty people per year. The corporation is a spinoff from a family owned business in New England. Wood Flex Flooring Corporation's founder, Mr. Vincent J. Marino and his son, the defendant, John V. Marino, II, have developed and own twelve world wide patents on their flooring designs and equipment.

Unfortunately, the business was not ever profitable and John V. Marino, II, subsidized the operating costs of this corporation from his own personal finances, and from loans made by his father to the corporation. Over the years of operation, John V. Marino, II, had spent approximately two million dollars ($2,000,000.00) of his own money and that of his father to provide jobs for the citizens of Randolph County.

2

In 1998, the corporation sought to obtain loan financing through Huntington National Bank in order to meet its working capital needs and to allow the production process to continue while awaiting payment on customer receivables. On September 9, 1998, the corporation was able to obtain three Small Business Administration (SBA) backed loans (two revolving lines of credit and one demand note) from Huntington National Bank. Under the terms of two of these loans, which were revolving lines of credit, the corporation could receive up to eighty percent (80%) of outstanding invoices, reflecting monies due to the corporation.

In pursuit of the loans of up to said 80% of outstanding invoices, the defendant, John V. Marino, II, submitted invoices to Huntington National Bank which were false, and did not reflect monies actually due to the corporation. These invoices total $159,977.23, and 80% is $127,981.78. Huntington National Bank, in fact, loaned the corporation, based on the said false invoices, $127,981.78.

Under this stipulation, the defendant, John V. Marino, II, may present to the Court information regarding monies received by Huntington National Bank from other invoices which were not falsely submitted, thereby reducing the actual losses incurred by Huntington National Bank. As well, John V. Marino, II. may present other information which would reduce the actual loss of Huntington National Bank.

Huntington National Bank was at all times relevant to the information insured by the FDIC.

The plea agreement also contained a waiver of appeal rights and a waiver of the petitioner's right to collaterally attack his sentence. Specifically, the agreement provided as follows:

If the Court finds that the applicable guideline range is level 14 or less, then the defendant waives the right under Title 18, United States Code, Section 3742 (a)(2) to appeal the sentence on any ground that it was imposed as a result of an incorrect application of the sentencing guideline.

If the Court finds that the applicable guideline range is level 14 or less, then the defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255.

On October 30, 2002, a plea hearing was held before the undersigned. During the plea hearing, James Watson, Special Agent with the FBI, testified that the petitioner had submitted 11

3

fraudulent invoices to Huntington National Bank ["Bank"] which total $159, 977.23.[2] The undersigned issued a Report and Recommendation recommending that the Court accept the petitioner's guilty plea. By Order entered on November 19, 2002, the Court accepted the undersigned's recommendation.

## B. Sentencing:

On January 22, 2003, the petitioner appeared before the Court for sentencing. The petitioner's attorney requested a downward departure under the guidelines and for the Court to give the petitioner "credit for those sums which the bank collected that was not on the basis of fraudulent invoices." The Court denied the motion because "there has not been sufficient evidence presented to me to show that any amounts that have been paid back to the bank necessarily impact the amount of restitution that is owed, to which amount there has been no objection filed to the presentence report." (Sentencing Tr. P. 10).

In sentencing the petitioner, the Court found a base offense level of 6, which the Court enhanced by 10 levels for a specific offense characteristic because the loss exceeded $120,000. The Court then gave the petitioner a 3 level reduction for acceptance of responsibility for a total offense level of 13. The Court further determined that the petitioner had a criminal history category of I based on zero criminal history points. The Court further noted that the guidelines provide a sentencing range of 12-18 months. The Court sentenced the petitioner to 12 months incarceration and 5 years of supervised release and ordered him to pay $127,981.78 in restitution.

---

[2]The invoices were as follows: Baiflex in the amount of $6, 228.44; Wood Company in the amount of $66,000; Baiflex in the amount of $1, 625; Trident Surfacing in the amount of $32,440.86; Baiflex in the amount of $31, 924.28; J.J. Curran in the amount of $25, 515.72; Final Floor in the amount of $26, 605.50; Trident Surfacing the amount of $25, 530.46; J.J. Curran in the amount of $15, 013.37; Casdoprh Wood in the amount of $20, 975.09 and Royalwood Associates in the amount of $14, 412.81.

On February 19, 2003, the petitioner's counsel moved to correct the sentence. The petitioner argued that the bank had failed to provide information to the United States Probation Office. He further argued that while he was loaned $127,981.78, the bank's loss was not $127,981.78 and that he should be given credit for the amounts of money that were received by the bank pursuant to collateral pledging agreements and from the sale of corporate assets and collections of the accounts receivable. The petitioner argued that the bank's losses were reduced because on April 23, 1999, the bank received $50,471.05 from J. J. Curran and Sons; on December 14, 1999, the bank received $9,196.57 from the sale of real-estate owned by the petitioner's corporation; on December 14, 1999, the bank received $2,480.27 from the sale of equipment owned by the petitioner's corporation; on December 20, 1999, the bank received $1,065 from the sale of equipment owned by the petitioner's corporation. Thus, the petitioner argued that the bank's losses were reduced to $64,768.89. On February 21, 2003, the Court denied the motion. The Court found that upon "review of the loan documents presented to this Court as well as the presentence report prepared by the probation officer indicates that the actual loss to the bank is well in excess of the $127,981.78 loaned to the defendant as a result of his criminal actions." (Doc. No. 22 p. 4). The Court further found as follows:

> It is unrealistic for the defendant to ask this Court to attribute the payment made by J.J. Curran & Sons and the funds received through sales of the defendant's property to the portion of the loss caused by the defendant's criminal actions. Rather it is more appropriate to attribute this credit to the total loss suffered by the Bank which would not affect the amount which defendant stipulated was loss caused by his own criminal actions.

(Id. at p. 5).

The Court further found that even if the amount could be attributed to the amount of loss caused by the petitioner's criminal actions, he would be entitled to no relief under U.S.S.G. §2B1.1, Application Note 2E(i) because he did not return the money before the offense was detected. The

Court did not address the petitioner's assertion that he was entitled to relief under Application Note 2E(ii).

### C. Appeal

The petitioner filed a notice of appeal. By Order filed on October 22, 2003, the Fourth Circuit dismissed the appeal.

### D. Federal Habeas Corpus

The petitioner asserts that the loan in question was a domestic revolving line of credit which was secured by accounts receivable, inventory, real estate, machinery and personal property all as described in a Deed of Trust and Financing Statement received by the bank, and thus is a collateralized loan subject to application note 2E(ii) of U.S.S.G. §2B1.1. According to the petitioner, when he executed the plea agreement, he thought that he would receive credit for the sale of collateral plus the fair market value of collateral not sold, which would reduce the sentencing guideline to its base offense level which provided 0-6 months incarceration and 12 months supervised release.

The petitioner further asserts that his counsel advised him to accept a plea from which there could be no appeal even from "an illegal sentence that far exceeded the guidelines"; (2) his attorney failed to provide the probation officer with evidence to reduce his sentence; and (3) his attorney failed to object to the presentence report.

The Government asserts that the petitioner's §2255 motion is barred by the waiver contained in the plea agreement, and that even if this Court finds that the petitioner was provided ineffective assistance of counsel, such would not have changed the outcome.

### E. Recommendation

Based upon a review of the record, the undersigned recommends that the respondent's motion to dismiss be granted and that the petitioner's §2255 motion be denied and dismissed from the Court's docket.

### III. ANALYSIS

#### A. Waiver.

Waiver of appellate rights in a plea agreement is generally valid. United States v. Attar, 38 F.3d 727 (4th Cir. 1994), cert. denied, 514 U.S. 1107 (1995). Likewise, "[w]aiver of collateral attack rights brought under §2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." United States v. Cockerham, 237 F.3d 1179, 1183 (10th Cir. 2001), cert. denied, 534 U.S. 1085 (2002); see also United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) and Butler v. United States, 173 F. Supp. 2d 489 (E.D. Va. 2001). The Fourth Circuit has not addressed waiver of the right to collaterally attack a sentence but has held regarding the waiver of the right to appeal that certain claims are excepted from the waiver. Specifically, claims of sentences in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor, United States v. Marin, 961 F.2d 493 (4th Cir. 1992), claims for ineffective assistance of counsel during the plea or following entry of the plea, and claims challenging the voluntariness of the plea are not barred by the waiver. Attar, 38 F.3d at 731-33. See also Butler, 173 F. Supp. 2d at 494.

Consequently, the petitioner's waiver does not bar his claims of ineffective assistance of counsel.

7

B. **Ineffective Assistance of Counsel.**

The petitioner raises thee claims of ineffective assistance of counsel: (1) his counsel advised him to accept a plea from which there could be no appeal even from "an illegal sentence that far exceeded the guidelines"; (2) his attorney failed to provide the probation officer with evidence to reduce his sentence; and (3) his attorney failed to object to the presentence report.

With regard to claims of ineffective assistance of counsel, counsel's conduct is measured under the two part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90.

Second, the petitioner must be prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Further, a defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden regarding the prejudice prong: he "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), cert. denied, 488 U.S. 843 (1988). The petitioner has not met this heightened standard as he has not asserted that but for his attorney's alleged errors he would have

8

gone to trial. Nor has the petitioner met the <u>Strickland</u> standard.

### 1. Advice regarding waiver of appellate rights.

The petitioner asserts that he "was not advised nor was he aware that he had given up his rights to appeal a sentence that was not in accordance with the guidelines as established by Congress." He further asserts that he received no benefit from entering a plea because had he gone to trial, the Court would have allowed more that $319,000.00 in credits against the loss, and he would have been sentenced at the Base Level of 6. The petitioner does not explain how he arrived a $319,000 for the amount of credits.

Further, the petitioner agreed to the waiver in the plea agreement and the waiver was discussed during the plea hearing. The petitioner testified at the plea hearing that he understood that he had waived his right to appeal and collaterally attack his sentence if the applicable guideline range was a level 14 or less. The fact that the petitioner did not receive the sentence he wanted to does not support his allegation that his attorney was ineffective regarding the advice he gave the petitioner regarding the waiver.

### 2. Failure to Provide Evidence to the Probation Officer.

The petitioner states that his attorney failed to present any evidence to the probation officer. The petitioner asserts that his attorney was to provide the probation officer with copies of the Deed of Trust and the Financing Statement which shows that the subject loan was a collateralized loan. The petitioner also asserts that his attorney had a document entitled "Statement of the West Virginia Economic Development Authority and the Huntington National Bank in Response to Informal Discovery Requested by the Defendant Regarding Accounts Receivable Collected, Property Sold, and Loan Histories Wood Flex Flooring."

While counsel did not provide such information to the probation officer, the petitioner presented his version of the events to the probation officer, and the record reveals that defense counsel attempted to present mitigating evidence to the Court at sentencing. Additionally, the petitioner's counsel filed a Motion to Correct Sentencing wherein he raised the same U.S.S.G. §2B1.1 Application Note 2(E)(i) and (ii) issue. The Court denied the motion. Thus, it does not appear that the petitioner was prejudiced by his attorney's failure to present such information to the probation officer.

### 3. Failure to Object to the Presentence Report.

While the petitioner's counsel did not object to the presentence report, the petitioner's counsel moved for a downward departure during the sentencing hearing. While the Court noted that the motion was untimely, the Court did consider the merits of the objection. See Sentencing Transcript and Order Denying Motion for Expedited Hearing and to Present Evidence, Denying Motion to Correct Sentencing and Denying Motion for Stay of Execution of Sentence (Doc. #22). Therefore, the petitioner was not prejudiced by his attorney's failure to object to the presentence report via formal written objections.

Moreover, the petitioner asserts that his sentence is wrong under Application Note 2(E)(ii) of U.S.S.G. §2B1.1 and that his attorney failed to adequately present this issue to the court. This note provides as follows:

E) Credits Against Loss.--Loss shall be reduced by the following:

(i) The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the

offense was detected or about to be detected by a victim or government agency.

(ii) In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.

The petitioner asserts that under this application note he "should have received credit for all collateral sold and the fair market value of that collateral not sold at the time of sentencing (actually equaling more than $550,000). He further asserts that had the credits been applied as stipulated in the statute, he should have been sentenced at an offense level of 6 (the base offense level) not an offense level of 13.

However, the petitioner's counsel specifically mentioned this application note when he filed the Motion to Correct Sentencing. While the petitioner alleges that his attorney presented the argument in an ambiguous fashion, the fact remains that the argument was presented to the Court. Moreover, when the petitioner's counsel filed the motion for bond pending appeal, the petitioner's counsel clearly set forth his argument under application note 2(E)(ii) that the petitioner was entitled to credit for collateral sold or the fair market value of collateral not sold.

With regard to such argument the Court found as follows:

> the credit was properly attributed to the loss suffered by the bank which would not affect the amount which defendant stipulated was loss caused by his won [sic] criminal actions. Even if it were possible to attribute this amount to the amount of loss caused by the defendant's criminal actions, this Court believes that applicable Sentencing Guidelines does not assist the defendant.

(Doc. P. 2-3).

The fact that the petitioner's attorney did not object to the presentence report did not prejudice him because the Court has found that he is not entitled to a lower sentence under

11

application note 2E(ii). The fact that the Court disagreed with the petitioner's argument does not demonstrate that his counsel was ineffective.

Consequently, the undersigned finds that the petitioner was not provided ineffective assistance of counsel and his §2255 motion is without merit.

## IV. **RECOMMENDATION**

The undersigned recommends that the Court enter an Order DENYING AND DISMISSING the petitioner's §2255 Motion and GRANTING the respondent's Motion to Dismiss.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of Court is directed to mail a copy of this Recommendation to the *pro se* petitioner, and the United States Attorney for the Northern District of West Virginia.

Dated: November 12, 2004

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE